51 CCPA

**The COCA-COLA COMPANY, Appellant,**

v.

**William C. CLAY, Jr., Appellee.**

Patent Appeal No. 7023.

United States Court of Customs
and Patent Appeals.

Nov. 14, 1963.

Julius R. Lunsford, Jr., Atlanta, Ga.
(Francis C. Browne, Browne, Schuyler
& Beveridge, Washington, D. C., of coun-
sel), for appellant.

Arthur H. Seidel, Philadelphia, Pa.
(Edward C. Gonda, Philadelphia, Pa., of
counsel), for appellee.

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH and ALMOND,
Associate Judges.

SMITH, Judge.

The determinative issue presented by
this appeal is whether appellee's regis-
tered mark "Cup-O'-Cola," [1] when used
on "cola flavored soft drink concentrate
powders," so resembles appellant's regis-
tered marks "Coca-Cola" [2] and "Coke," [3]
for "beverages and syrups for the man-
ufacture of such beverages," as to be
likely to cause confusion or mistake or
to deceive purchasers. The Trademark
Trial and Appeal Board, in dismissing
appellant's position to cancel appellee's
mark from the Supplemental Register,
summarized the historical positions of

---

[1]. Registration No. 695,859 registered April
5, 1960.

[2]. Registration No. 22,406 registered Jan.
31, 1893.
Registration No. 47,189 registered Oct.
31, 1905.

Registration No. 238,145 registered Jan.
31, 1928.
Registration No. 238,146 registered Jan.
31, 1928.

[3]. Registration No. 415,755 registered Aug.
14, 1945.

the marks in controversy and stated the issue as follows (133 USPQ 606, 609):

"There can be no question but that 'COCA-COLA' and 'COKE' have been celebrated trademarks in the beverage field since long prior to respondent's adoption and use of 'CUP-O'-COLA'. Moreover, although respondent's concentrate powders are intended for use in making a non-carbonated hot cola flavored drink and petitioner's cola soft drink is carbonated and is advertised and promoted to be used and served only chilled or cold, they are, nevertheless, products which purchasers would more than likely attribute to the same source if they were to be sold under the same or similar marks. The question of likelihood of confusion therefore turns on whether 'CUP-O'-COLA' so resembles 'COCA-COLA' and 'COKE' as to be likely to cause such confusion as to source."

We have reviewed the board's conclusion that appellant has failed to establish likelihood of confusion and, in light of the record as a whole, we cannot accept that conclusion.

██ Likelihood of confusion or mistake must be tested in the market place. E. g., In re Helene Curtis Industries, Inc., 305 F.2d 492, 49 CCPA 1367; Cecile Gagnon Co. v. Bourjois, Inc., 223 F.2d 731, 42 CCPA 972. It is not necessary, however, to prove instances of actual confusion or mistake; it is sufficient if the mere likelihood thereof is established. E. g., Goldring, Inc. v. Towncliffe, Inc., 234 F.2d 265, 43 CCPA 957 [Cancellation]; Kautenberg Co. v. Ekco Products Co., 251 F.2d 628, 45 CCPA 761 [Opposition]; Admiral Corp. v. Penco, Inc., 203 F.2d 517 (2d Cir. 1953) [Infringement].

█ In determining likelihood of confusion it is important to give consideration to the historical relationships as to the use of the marks by the parties. Appellee is the newcomer to this field. Prior to his adoption of the mark "Cup-O'-Cola" in 1957, appellant's marks "Coca-Cola" and "Coke" had been used, up through the year 1956, on over two and one-half billion gallons of appellant's product and was backed by advertising expenditures through 1956 in excess of 450 million dollars. Thus, when appellee entered this field there had been a continuous and widespread use by appellant of its marks both on its products and in advertising. Such use had been so extensive and so continuous that the purchasing public has long recognized and associated "Coca-Cola" and "Coke" with appellant's brand of cola beverage products.

While appellee stresses an alleged difference in the goods, we are limited in this proceeding to the goods named in the registration which appellant is seeking to cancel. We find nothing in the designation of goods therein from which to accept the distinction appellee has urged that his mark is used on hot cola drinks while appellant's mark is used on carbonated cold cola drinks. The registration sought to be cancelled is for "cola flavored soft drink concentrate powders." While appellant's marks are used mainly on liquid concentrates for cola flavored soft drinks and on the drinks made therefrom, it is significant in this respect that appellant has prepared powdered concentrates for overseas shipments used in in its own plants to make cold carbonated beverages. While the Lanham Act does not require consideration of whether or not the goods have the same descriptive properties (See Eureka Williams Corp. v. McCorquodale, 205 F.2d 155, 40 CCPA 1028,) we think the goods as described in appellee's registration are products which would be likely to be sold to the same purchasers and in the same markets as those of appellant.

█ Appellee also urges that since "Cola" is the common descriptive name of a soft drink flavoring, likelihood of confusion or mistake cannot be predicated on the common use of this word in the marks. We are not here concerned with the differences between parts of the marks. They must be compared as they are used. Thus, we are required to compare "Coca-Cola" and "Cup-O'-Cola" in

their entireties. E. g., Arnold, Schwinn & Co. v. Evans Products Co., 302 F.2d 765, 49 CCPA 1113; Johnson & Johnson v. Veon Chemical Corp., 301 F.2d 952, 49 CCPA 1052.

When the entire marks are compared we find, as appellant asserts in its brief:

" 'Coca-Cola' and 'Cup-O'-Cola' are compound, hyphenated words. Both marks begin with the letter 'c' and end with the letter 'a'. Both marks contain four syllables. The last two syllables are identical."

There also is a similarity in appearance between the marks. To the average purchaser, appellee's hyphenated word mark beginning with a capital "C" and ending with the word "Cola" looks like appellant's familiar mark. To the extent that appellee has attempted to present something other than a block printing of his mark he has done so by the use of the picture of a cup containing a steaming beverage which appears on one of the packets of his product. (Appellee's Exhibit E.) Indeed, this exhibit dramatizes the similarity of the marks, for appearing on the side of the cup is the word "Cola," not in the block letters of appellee's registration but rather in a script so similar to the familiar "Coca-Cola" script that a close, side by side comparison is required to perceive the few minor differences which may be present.

The semantic differences which may exist between the two marks "Cup-O'-Cola" and "Coca-Cola" would, we think, be lost on the average purchaser in the market place. Certainly they would be outweighed by the phonetic and visual similarities. The question which we are required to decide, then, is simply this: would the similarities in sound and appearance between the marks of appellant and appellee, as used with their respective goods, be likely to cause confusion in the mind of an ordinary drinker of cola beverages as to the source or origin of such goods? We are convinced that such a likelihood would exist.

The decision of the board is accordingly reversed.

Reversed.

WORLEY, Chief Judge (dissenting).

It seems to me the evidence of record clearly supports the unanimous decision of the Trademark Trial and Appeal Board that appellee's mark "Cup-O'-Cola" should not be canceled from the Supplemental Register. I would affirm.